IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


| | | |
|---|---|---|
| CBP RESOURCES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:03CV988 |
| | ) | |
| SGS CONTROL SERVICES INC., | ) | |
| | ) | |
| Defendant. | ) | |


MEMORANDUM OPINION and ORDER

OSTEEN, District Judge

        Plaintiff CBP Resources, Inc. ("CBP"), a North Carolina
corporation with its principal place of business in Greensboro,
North Carolina, brings this diversity action against Defendant
SGS Control Services, Inc. ("SGS"), a New York corporation with
its principal place of business in New York, New York.  Plaintiff
brings suit to recoup its losses from an arbitration proceeding
by bringing claims against Defendant for indemnification;
contribution; and unfair and deceptive trade practices pursuant
to Chapter 75 of the North Carolina General Statutes, N.C. Gen.
Stat. § 75-1.1 ("Chapter 75").  This matter is now before the
court on Defendant's motion to dismiss.  For the reasons set
forth herein, Defendant's motion will be denied in part and
granted in part.

## I.    BACKGROUND

The following facts are presented in the light most favorable to Plaintiff.[1]

Plaintiff CBP is a Greensboro, North Carolina, manufacturer of "yellow grease," a low-grade inedible fat which can include recycled frying oils and poultry fat.  Plaintiff manufactures yellow grease from recycled fats and oils it collects from restaurants.

Between February 1998 and March 1999, Plaintiff entered into a series of five purchase order contracts to sell approximately 3,500 metric tons of yellow grease to Sun Chemicals Trading Corporation ("Sun"), a Turkish company that traded in fats and oils.  The yellow grease was to be used as a poultry feed additive.  The contracts were brokered by Pasternak, Baum & Co. ("Pasternak"), an agricultural commodity broker in Greenwich, Connecticut.

Sun conditioned each purchase from Plaintiff on the proviso that the grease contain no lard, pork, or pig-derived fat in order to comply with Islamic canons observed in Turkey.  In response to Sun's "no lard" requirement, Plaintiff approached Defendant SGS about testing the yellow grease for the absence of lard.  Defendant is a comprehensive laboratory analysis and

---

[1]    See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986); Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994).

inspection service which promotes its agricultural analytical
expertise in food and commodity testing, including testing of
protein, fats, and vegetable oils.  Defendant knew the yellow
grease was intended for an Islamic market and assured Plaintiff
it could perform a test to certify the absence of lard in the
yellow grease.

Plaintiff relied upon Defendant's representations about its
testing ability and contracted with Defendant to test samples
from each shipment of yellow grease bound for Turkey.  Defendant
took samples from each shipment, once it was loaded on ships,
using American Oil Chemist Society ("AOCS") Method Ch 3-91, a
test it had selected.  After testing each shipment, Defendant
reported to Plaintiff the tests were negative for the presence of
lard and issued "no lard certificates" to Plaintiff, who, in
turn, presented them to Sun.[2]

---

[2]  The court may consider the five "no lard certificates" in
determining Defendant's motion to dismiss, without converting the
motion into one for summary judgment, because Plaintiff
incorporated the certificates into its complaint by reference and
attachment.  See, e.g., Fayetteville Investors v. Commercial
Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991) (citing Rule
10(c) of the Federal Rules of Civil Procedure to allow
consideration of a construction contract and performance bond
attached to the complaint); Davis v. Hudgins, 896 F. Supp. 561,
566 (E.D. Va. 1995) (recognizing that a court may only rely upon
documents attached as exhibits or incorporated by reference into
a complaint for purposes of a motion to dismiss).  Each
certificate is drawn on Defendant's letterhead, is addressed to
Plaintiff, and is signed by a representative of Defendant.
(Compl. Ex. 1.)  The wording of the test results varies between
certificates, but the first certificate is representative:  "THE
                                                    (continued...)

3

Despite the certificates, some participants in the Turkish poultry feed market raised concerns about the purity of the yellow grease. As a result, Plaintiff sought assurances from Defendant that its tests were accurate. Defendant did not give Plaintiff adequate assurances of reliability and later refused to certify that AOCS Method Ch 3-91 could determine the absence of lard in yellow grease. Plaintiff later discovered there was no known test to accurately determine the total absence of lard in yellow grease.

Sun and its founder and majority shareholder, Ahmet Cullu ("Cullu"), subsequently brought suit in this court against CBP, SGS, and Pasternak. The suit alleged claims of breach of contract, fraud, breach of express and implied warranties, unfair and deceptive trade practices, and infliction of emotional distress. By consent order and pursuant to the terms of the purchase order contracts, Sun, Cullu, CBP, and Pasternak agreed to arbitrate their claims. SGS, however, refused to participate in the arbitration. Before arbitration began, Pasternak settled with Sun and Cullu, leaving CBP the only defendant in arbitration.

---

[2](...continued)
FEED FAT BLEND LOADED ON [VESSEL] "ILYA ERENBURG" ON FEBRUARY 15TH, 1998 FOR EXPORT TO [SUN'S ARABIC NAME OF 'SUN KIMYA, GIDA SANAYI VE TICARET A.S.'], TURKEY, IS A MIXTURE OF RECYCLED FRYING OILS AND POULTRY FAT. NO LARD WAS USED IN THIS BLEND." (Id.)

4

The three-arbitrator panel held evidentiary hearings over eight days in April, May, and June 2003. Evidence was presented by live witnesses, affidavits, deposition transcripts, and documentary evidence. The panel issued a detailed award[3] on July 9, 2003. (Compl. Ex. 3.) The panel awarded Sun $300,000 in lost profits against CBP. As to Cullu, the panel awarded him $150,000 for the loss of value of Sun, $1,275 for past medical expenses, $1,456 for future medical expenses, and $1.00 for "unquantifiable temporary damage" to his personal reputation. (Id. at 7.) The panel trebled the awards to Sun and Cullu under Chapter 75. In total, the arbitration panel awarded Sun and Cullu approximately $1.35 million dollars in damages against CBP, which was then reduced by the pre-arbitration settlement with Pasternak.[4]

_____

[3] The court may properly consider the award for purposes of establishing a factual record in the case because it was both referenced in and attached to Plaintiff's complaint (Compl. Ex. 3). See Fed. R. Civ. P. 10(c). Moreover, pursuant to Rule 201(b) of the Federal Rules of Evidence, courts may take judicial notice of adjudicative facts that are "not subject to reasonable dispute." Fed. R. Civ. P. 201(b). Facts are indisputable if they are "generally known" or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Id. Here, the arbitration award is in the possession of both parties, is referenced in the complaint, and its authenticity is not disputed by either party. Under the circumstances, the court may take judicial notice of the arbitration award. See, e.g., United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003) (holding that courts may take judicial notice of certain public records, including "records and reports of administrative bodies," which would include arbitration panels).

[4] The arbitration panel released a modified award on or
(continued...)

After the arbitration concluded, SGS, the nonparty to the arbitration, moved to dismiss Sun and Cullu's complaint against it based upon complete satisfaction and collateral estoppel. The court dismissed Sun and Cullu's claims against SGS because "[u]nder the detailed arbitration award, of which the Court takes judicial notice, [Sun and Cullu] have made a recovery for all of the injuries they assert against SGS in this action." Sun Chems. Trading Corp. v. CBP Res., Inc., No. 1:01-CV-00425 (M.D.N.C. June 3, 2004) (Order and Recommendation of United States Magistrate Judge adopted July 29, 2004).

Plaintiff brought this separate action against Defendant asserting a claim for unfair and deceptive trade practices and seeking to recover from Defendant some or all of the arbitration award under the theories of implied-in-law indemnity and contribution. Now before the court is Defendant's motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

---

[4](...continued)
about August 15, 2003, upon petitions by Plaintiff, Sun, and Cullu. (See Compl. Ex. 3.) The modified award clarified the amount of arbitration costs payable by Plaintiff. It also clarified the panel's denial of attorney's fees and expenses under Chapter 75 to Sun and Cullu and their claim of damages for storage of the yellow grease in Turkey. In all other respects, the original award was reaffirmed.

6

## II. STANDARD OF REVIEW

A defendant's motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the pleadings, but does not seek to resolve disputes surrounding the facts. <u>Republican Party of N.C. v. Martin</u>, 980 F.2d 943, 952 (4th Cir. 1992). A court must determine only if the challenged pleading fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The issue is not whether the plaintiff will ultimately prevail on his claim, but whether he is entitled to offer evidence to support the claim. <u>Revene v. Charles County Comm'rs</u>, 882 F.2d 870, 872 (4th Cir. 1989). A pleading "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957). The pleading must be liberally construed in the light most favorable to the nonmoving party and allegations made therein are taken as true. <u>Jenkins v. McKeithen</u>, 395 U.S. 411, 421, 89 S. Ct. 1843, 1849 (1969).

## III. ANALYSIS

Plaintiff brings three causes of action: unfair and deceptive trade practices under Chapter 75, implied-in-law indemnity, and contribution. Defendant argues that Plaintiff's

complaint should be dismissed because, as to all counts, it has
failed to state a claim upon which relief can be granted.

### A. Unfair and Deceptive Trade Practices

In Count I, Plaintiff claims Defendant's negligent or
fraudulent misrepresentations relating to tests for the presence
of lard, its performance of the deceptive tests, and its issuance
of deceptive certifications constitute a violation of Chapter 75.
(Compl. ¶ 32.)  Defendant argues Plaintiff's claims of deception,
which amount to either misrepresentation or fraud, have not been
pled with particularity in accordance with Rule 9(b) of the
Federal Rules of Civil Procedure.  (Def.'s Mem. Supp. Mot.
Dismiss Compl. at 10-11.)  Defendant further argues that because
Plaintiff's allegations fail for want of particularity, what
remains is a mere breach of contract, which is not actionable
under Chapter 75.  (Id. at 11-12.)

The Federal Rules of Civil Procedure create a liberal system
of "notice" pleading in which a complaint must contain only a
"short and plain statement of the claim showing that the pleader
is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Exceptions to
the liberal system are contained in Rule 9 of the Federal Rules
of Civil Procedure ("Rule 9"), which requires heightened pleading
for special matters.  See Fed. R. Civ. P. 9.  One such heightened
pleading requirement is found in Rule 9(b), which provides that
"[i]n all averments of fraud or mistake, the circumstances

8

constituting fraud or mistake shall be stated with particularity." Id. at 9(b). In construing Rule 9(b), courts require that a plaintiff plead the "time, place, and contents of the alleged fraudulent representation, as well as the identity of each person making the misrepresentation and what was obtained thereby." Liner v. DiCresce, 905 F. Supp. 280, 287 (M.D.N.C. 1994) (quoting Riley v. Murdock, 828 F. Supp. 1215, 1225 (E.D.N.C. 1993)).

The court has not located any controlling authority in the Fourth Circuit as to whether a claim under Chapter 75, premised on negligent or fraudulent misrepresentation, must be pled with particularity. Nor have any North Carolina courts required the same under their mirrored rule. See N.C. Gen. Stat. § 1A-1, Rule 9(b). Some federal courts have extended Rule 9(b) to claims under consumer protection statutes similar to North Carolina's Chapter 75, especially where the supporting allegations of the claims allege fraudulent conduct. See, e.g., In re Universal Serv. Fund Tel. Billing Practices Litig., 300 F. Supp. 2d 1107, 1150 (D. Kan. 2003) (deceptive trade practices under the Kansas Consumer Protection Act); Petri v. Gatlin, 997 F. Supp. 956, 973 (N.D. Ill. 1997) (Illinois Consumer Fraud and Deceptive Business Practices Act); Patel v. Holiday Hospitality Franchising, Inc., 172 F. Supp. 2d 821, 825 (N.D. Tex. 2001) (Texas Deceptive Trade Practices Act); Adams v. NVR Homes, Inc., 193 F.R.D. 243, 251-52

9

(D. Md. 2000) (unfair and deceptive trade practices alleged under Maryland law). These courts do so primarily because deceptive trade practices often "sound in fraud," see Naporano Iron & Metal Co. v. American Crane Corp., 79 F. Supp. 2d 494, 510 (D.N.J. 1999), and they believe the underlying reasons for the heightened pleading standard for fraud apply to claims of deceptive trade practices based on fraud or misrepresentation. See Petri, 997 F. Supp. at 973.

Other federal courts do not require allegations of unfair and deceptive trade practices to meet the heightened pleading requirements of Rule 9(b). See, e.g., Pelman ex rel. Pelman v. McDonald's Corp., 396 F.3d 508, 511 (2d Cir. 2005) (New York Consumer Protection Act); F.T.C. v. Security Rare Coin & Bullion Corp., 931 F.2d 1312, 1316 (8th Cir. 1991) (unfair and deceptive trade practice under the Federal Trade Commission Act). These courts distinguish deceptive trade practices from fraud. The former is broader and does not require the same essential elements of intent, reliance, and subjectiveness; thus, the historical rationales for requiring particularity for claims of fraud do not apply to deceptive trade practices. See Pelman, 396 F.3d at 511; see also, John P. Villano Inc. v. CBS, Inc., 176 F.R.D. 130 (S.D.N.Y. 1997) ("[N]othing in the language or history of Rule 9(b) suggests that it is intended to apply, willy-nilly,

10

to every statutory tort that includes an element of false statement.")

The court adopts the second approach in declining to extend Rule 9(b)'s coverage to claims under North Carolina's Chapter 75. The rationales for the heightened pleading standard in cases of fraud or mistake do not equally apply to deceptive trade practices. Claims under Chapter 75 are commonplace in litigation over commercial transactions and do not carry the same stigma of moral turpitude or damage to reputation that is associated with fraud. See Banca Cremi, S.A. v. Alex. Brown & Sons, Inc., 132 F.3d 1017, 1036 (4th Cir. 1997) ("[I]t is clear that the mere accusation of fraud can be damaging to a defendant's reputation."). Because claims of unfair and deceptive trade practices rarely stand alone, but are often attendant to claims such as fraud, misrepresentation, breach of contract, and deceptive advertising, requiring particularity for Chapter 75 claims would do little to protect defendants from frivolous lawsuits. See Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc., 190 F. Supp. 2d 785, 798 (D. Md. 2002) (recognizing part of the purpose of Rule 9(b) is to protect defendants from "groundless accusation[s] of fraud incited by the possibility of an 'in terrorem increment' in the settlement value of a lawsuit"). Unlike fraud, claims of unfair and deceptive trade practices, a relatively new statutory remedy, are not among

11

the historically disfavored actions.  See Breeden v. Richmond
Cmty. Coll., 171 F.R.D. 189, 200 n.11 (M.D.N.C. 1997) (noting
disfavored actions included fraud and deceit, libel and slander,
and malicious prosecution).  Nor is the court aware of any abuse
of Chapter 75 claims brought solely in hopes of dredging up some
actual violation through discovery.  See 5A Charles Alan Wright &
Arthur R. Miller, Federal Practice and Procedure § 1296 at 38 (3d
ed. 2004) (recognizing such activity as a fear of abuse of fraud
claims).

     The elements required to be proved for fraud claims are
dissimilar from those required under Chapter 75.  Fraud contains
elements of subjectivity of the perpetrator (intent) and the
victim (actual reliance), see Terry v. Terry, 302 N.C. 77, 83,
273 S.E.2d 674, 677 (1981) (setting out the elements of fraud),
which may require a substantial amount of particularized
information to prepare an adequate defense.  See Banca Cremi, 132
F.3d at 1036 n.25 (recognizing preparation of a defense as a
reason for requiring particularity in fraud allegations).
Chapter 75 claims require neither intent of the actor nor actual
reliance of the victim.  See Blackwell v. Dorosko, 95 N.C. App.
637, 638-39, 383 S.E.2d 670, 671 (1989) (explaining intent to
deceive and actual deception are not required under the statute).
Furthermore, what constitutes an unfair and deceptive trade
practice is a matter of law, Eastover Ridge, L.L.C. v. Metric

12

Constructors, Inc., 139 N.C. App. 360, 363, 533 S.E.2d 827, 830 (2000), and requires less burdensome elements of proof than fraud. See Marshall v. Miller, 302 N.C. 539, 543-44, 276 S.E.2d 397, 400 (1981).

Rule 9(b) expressly refers only to fraud and mistake. Although some federal courts extend Rule 9(b) to "all cases where the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud," Toner v. Allstate Ins. Co., 821 F. Supp. 276, 283 (D. Del. 1993), the court cannot extend the rule's coverage to claims under Chapter 75. The similarity between fraud and negligent misrepresentation, which has caused this court to extend the particularity requirement to negligent misrepresentation, see, e.g., Dealers Supply Co. v. Cheil Indus., Inc., 348 F. Supp. 2d 579, 590 (M.D.N.C. 2004), does not apply to conduct which underlies Chapter 75 claims.

Plaintiff's Chapter 75 claim meets the liberal pleading standard set forth in the Federal Rules of Civil Procedure. It incorporates the factual allegations pertaining to Defendant's alleged misrepresentations regarding the yellow grease, including the contents of the "no-lard certificates," and asserts that those misrepresentations constitute an unfair and deceptive trade practice. (Compl. ¶¶ 30-37.) As a result, it gives "fair notice of what the plaintiff's claim is and the grounds upon which it

13

rests." <u>Conley v. Gibson</u>, 355 U.S. 41, 47, 78 S. Ct. 99, 103 (1957). The allegations also constitute substantially more than a mere breach of contract. <u>See</u> <u>Branch Banking & Trust Co. v. Thompson</u>, 107 N.C. App. 53, 62, 418 S.E.2d 694, 700 (1992). Therefore, Plaintiff's Chapter 75 claim states a claim upon which relief can be granted. Defendant's motion for dismissal as to Count I of Plaintiff's complaint will be denied.

## B. Implied-in-Law Indemnity and Contribution

In Counts II and III, Plaintiff brings alternative claims for implied-in-law indemnity and contribution, respectively. In Count II, Plaintiff seeks indemnification from Defendant for the approximately $1.35 million damages awarded to Sun and Cullu by the arbitration panel in <u>Sun Chems. Trading Corp. v. CBP Res., Inc.</u>, No. 1:01CV00425 (M.D.N.C.), plus attorneys' fees and costs in defending that action. Plaintiff alleges that as between it and Defendant, Defendant is primarily and actively liable for the injuries to Sun and Cullu, and it is merely secondarily and passively liable. (Compl. ¶ 53.) In its contribution claim of Count III, Plaintiff alleges, to the extent it shares common liability with Defendant for the damages to Sun and Cullu and is not entitled to indemnification, it has paid more than its <u>pro rata</u> share of such liability. (<u>Id.</u> at ¶¶ 57-58.)

Defendant argues that both claims should be dismissed because implied-in-law indemnity and contribution require an

14

underlying tort injury, and the underlying causes of action between Sun, Cullu, and Plaintiff are matters of contract. (Def.'s Mem. Supp. Mot. Dismiss Compl. at 14.)  Defendant further argues, even if Plaintiff has demonstrated the underlying causes of action contained some tort aspects, Plaintiff cannot satisfy the remaining elements of a claim for indemnity.  (<u>Id.</u> at 14-16.)

Defendant is correct that both implied-in-law indemnity and contribution require an underlying tort injury.  <u>See</u> <u>Kaleel Builders, Inc. v. Ashby</u>, 161 N.C. App. 34, 41, 587 S.E.2d 470, 475 (2003) (implied-in-law indemnity); <u>Holland v. Edgerton</u>, 85 N.C. App. 567, 571, 355 S.E.2d 514, 517 (1987) (contribution). Therefore, the court must look to the decision of the arbitration panel, which awarded the damages Plaintiff seeks to recover.  The court must first determine whether any of the claims brought by Sun and Cullu against Plaintiff sound in tort.[5]  If one or more

---

[5]  Plaintiff contends the court must construe the arbitration award in the light most favorable to Plaintiff. (Mem. Law Opp'n Def.'s Mot. Dismiss at 6.)  While the court agrees the fact of the arbitration panel's decision, including the statements of the panel contained in the award, are factual matters subject to this procedural rule, the effect of the panel's findings on Plaintiff's claims are a matter of law. Here, the court must recognize, as Defendant asserts, that collateral estoppel, also called issue preclusion, "precludes relitigation of an issue decided previously in judicial or administrative proceedings provided the party against whom the prior decision was asserted enjoyed a full and fair opportunity to litigate that issue in an earlier proceeding." <u>In re McNallen</u>, 62 F.3d 619, 624 (4th Cir. 1995).  The arbitration, to which Plaintiff was a party, is such an administrative proceeding.  Furthermore, Plaintiff had a full and fair
(continued...)

15

claims are tortious, the court must determine which theory of
recovery, indemnity or contribution, if any, applies.

### 1. Whether the Claims Brought by Sun and Cullu against Plaintiff Sound in Tort

In their respective memoranda of law, the parties take
diametric "all or nothing" positions with regard to whether the
panel's award of damages to Sun and Cullu sound in tort.
Defendant argues "[a]ll of the damages awarded to Sun and Cullu
by the panel were based on the contracts between CBP and Sun and
the express and implied warranties CBP gave to Sun pertaining
thereto." (Def.'s Mem. Supp. Mot. Dismiss Compl. at 14.)
Plaintiff concludes "the damages awarded in the arbitration are
based on tort theories and are proper subjects of claims for
contribution and indemnification." (Mem. Law Opp'n Def.'s Mot.
Dismiss at 18.) The court cannot, however, generalize the
panel's award as the parties suggest, but must examine each
damage award independently.

### a. Sun's Claims Against Plaintiff for Actual Damages

Sun's award of actual damages is plainly based on contract
theory. Sun asserted claims for breach of contract, breach of

---

[5](...continued)
opportunity to litigate certain issues arising during the
arbitration. As a result, the court must respect the legal
findings of the arbitration panel and determine their effect on
Plaintiff's claims for implied-in-law indemnity and contribution
as a matter of law.

16

express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, fraud, and unfair and deceptive trade practices. (Compl. Ex. 3 at 3.) With the exception of the fraud claim, for which the panel found Sun failed to carry its burden (id. at 6), and the Chapter 75 claim addressed separately below, all of the claims alleged in Sun's arbitration petition are contractual in nature. See Holland v. Edgerton, 85 N.C. App. 567, 574, 355 S.E.2d 514, 518 (1987) (recognizing claims for breach of warranties are contractual).

The panel determined that the yellow grease contracts between CBP and Sun included an express warranty by CBP that the yellow grease did not contain lard. (Compl. Ex. 3 at 3.) In addition to the express warranty, the panel found that CBP was aware of Sun's special use of the yellow grease as a feed additive in a Muslim country and "impliedly warranted to Sun that CBP's product was fit for that particular purpose." (Id. at 4.) The panel also determined that CBP warranted its product to be "merchantable as feed fat in a Muslim country." (Id.) Having found both express and implied warranties, the panel concluded that "CBP's sale of its Yellow Grease product to Sun constituted a breach of CBP's express warranty and CBP's implied warranties of merchantability and fitness for a particular purpose." (Id.) The duties Plaintiff breached were created by contract.

17

The type of damages awarded Sun also reflect contract-based causes of action. The panel concluded Sun suffered incidental and consequential damages as a result of "CBP's breaches," which were "recoverable from CBP under UCC §2-715" (id.), the buyer's damages provision of the uniform laws governing commercial transactions. See N.C. Gen. Stat. § 25-2-715. Those damages took the form of lost profits in the amount of $300,000, which the panel awarded for CBP's "breach of contract and warranty claims." (Compl. Ex. 3 at 6.)

Because the arbitration award fails to mention any tort claims, liability, or damages as to Sun, the court can find no tort basis for implied-in-law indemnity or contribution between Plaintiff and Defendant as to the award of Sun's actual damages.

### b. Cullu's Claims Against Plaintiff for Actual Damages

The court comes to the opposite conclusion with regard to Cullu's actual damages, as all of the language in the award points to tortious conduct. Cullu's arbitration petition asserted compensatory claims of fraudulent and negligent misrepresentation, negligent infliction of emotional distress, and unfair and deceptive trade practices. (Id.) Cullu properly asserted no breaches of contract or warranties because he was not a party to the yellow grease contracts between CBP and Sun.

CBP's breach as to Cullu was tortious. The panel determined "the actions of CBP constitute[d] a negligent misrepresentation"

18

that damaged Cullu. (Id. at 7.)  The panel found such conduct to be "actionable under Section 552 of the Restatement (Second) of Torts." (Id.)  The negligent misrepresentation arose because "CBP provided inaccurate information for the guidance of Sun and Mr. Cullu[,] . . . failed to exercise reasonable care[, and] . . . Sun and Mr. Cullu justifiably relied upon the information." (Id.)  These detailed findings mirror the elements of a tort claim of negligent misrepresentation in North Carolina:

> The tort of negligent misrepresentation occurs when in the course of a business or other transaction in which an individual has a pecuniary interest, he or she supplies false information for the guidance of others in a business transaction, without exercising reasonable care in obtaining or communicating the information.

Fulton v. Vickery, 73 N.C. App. 382, 388, 326 S.E.2d 354, 358 (1985).

Furthermore, the damages awarded by the panel were tort damages.  The panel awarded Cullu the loss of value of Sun, or $150,000, as a result of CBP's "negligent conduct." (Compl. Ex. 3 at 7.)  The panel found that "CBP's negligent misrepresentation also damaged the reputation of Mr. Cullu," but that the damage was temporary, and thus awarded $1.00 for the "unquantifiable temporary damage." (Id.)  The panel further awarded Cullu physician expenses and other medical costs attendant to an ulcer that "was reasonably related to the temporary damage to Mr.

19

Cullu's reputation and the loss of Sun, which were themselves
proximately caused by the negligent conduct of CBP." (Id.)

Despite the plain language of the arbitration award,
Defendant argues because the misrepresentations occurred in the
context of the negotiation, execution, and performance of the
yellow grease contracts, the award to Cullu for "negligent
misrepresentation" is contractual in nature. (Def.'s Mem. Supp.
Mot. Dismiss Compl. at 14.) Although Defendant is correct that
the simple failure to perform a contract, even if due to
negligence or lack of skill, does not give rise to a tort, it
overlooks a categorical exception to the rule. See North
Carolina State Ports Auth. v. Lloyd A. Fry Roofing Co., 294 N.C.
73, 81-82, 240 S.E.2d 345, 350 (1978), rejected in part on other
grounds, Trustees of Rowan Tech. Coll. v. J. Hyatt Hammond
Assocs., Inc., 313 N.C. 230, 242, 328 S.E.2d 274, 281 (1985)
(recognizing four categorical exceptions). North Carolina courts
have held promisors liable in tort actions when "[t]he injury,
proximately caused by the promisor's negligent act or omission in
the performance of his contract, was an injury to the person or
property of someone other than the promisee." Id. (citing Pinnix
v. Toomey, 242 N.C. 358, 87 S.E.2d 893 (1955) and Council v.
Dickerson's, Inc., 233 N.C. 472, 64 S.E.2d 551 (1951)). Such is
the case here. Plaintiff's liability to Cullu did not arise out
of contract because Cullu was not a party to the yellow grease

20

contracts; nor did it arise by statute. Instead, Plaintiff's liability arose out of the common law duty to exercise due care to avoid injury to foreseeable members of the public. <u>See</u> <u>Pinnix</u>, 242 N.C. at 362, 87 S.E.2d at 897-98. The arbitration panel deemed CBP's misrepresentations to Sun <u>negligent</u> and thus tortious. It is not for this court to second-guess the binding decision of the arbitration panel in this collateral action.

Because the plain language of the arbitration award evidences claims, liability, and damages for the tort of negligent misrepresentation, the court finds the tort requirement met for Plaintiff's claims for implied-in-law indemnity and contribution as to Cullu's actual damages.

### c. Unfair and Deceptive Trade Practices

In addition to Sun and Cullu's separate awards for actual damages, the panel awarded both Sun and Cullu treble damages under Chapter 75. The court is not aware of any controlling authority as to whether a recovery for unfair and deceptive trade practices is a "tort" for which recovery may be sought through implied-in-law indemnity and contribution. The court must, therefore, look to the statutory right itself. An action under Chapter 75 for unfair and deceptive trade practices, which is a creation of statute, has been characterized as <u>sui generis</u> and thus "neither wholly tortious nor wholly contractual in nature." <u>Bernard v. Central Carolina Truck Sales, Inc.</u>, 68 N.C. App. 228,

21

230, 314 S.E.2d 582, 584 (1984).  In discussing the purpose of
Chapter 75, the North Carolina Supreme Court stated:

> Such legislation was needed because common law
> remedies had proved often ineffective.  Tort actions
> for deceit in cases of misrepresentation involved proof
> of scienter as an essential element and were subject to
> the defense of "puffing."  Proof of actionable fraud
> involved a heavy burden of proof, including a showing
> of intent to deceive.  Actions alleging breach of
> express and implied warranties in contract also
> entailed burdensome elements of proof.  A contract
> action for recision or restitution might be impeded by
> the parol evidence rule where a form contract
> disclaimed oral misrepresentations made in the course
> of a sale.

Marshall v. Miller, 302 N.C. 539, 543-44, 276 S.E.2d 397, 400
(1981) (internal citations omitted).

    The sui generis nature of unfair and deceptive trade
practices has caused considerable confusion in determining
whether contract or tort principles apply to Chapter 75 claims.
Early controversy existed over whether Chapter 75 was punitive or
remedial in nature.  Recognizing the three purposes of the treble
damages provision:  (1) to incentivize injured individuals to
assist the State in ferreting out fraudulent and deceptive trade
practices; (2) to provide a remedy for recovery of damages; and
(3) to serve as a deterrent against future violations of the
statute, Holley v. Coggin Pontiac, Inc., 43 N.C. App. 229, 237,
259 S.E.2d 1, 6 (1979), the issue was settled by deeming the
statute a "hybrid."  State ex rel. Edmisten v. J.C. Penney Co.,
292 N.C. 311, 319, 233 S.E.2d 895, 900 (1977).  There has been

22

similar debate over whether bad faith was required to recover treble damages for Chapter 75 claims, as is required for punitive damages arising from common law tort claims. The North Carolina Supreme Court held that bad faith was not required and that "analogies to other rules of common law governing the imposition of punitive damages should not control." <u>Marshall</u>, 302 N.C. at 546-47, 276 S.E.2d at 402. The court in <u>Investors Title Insurance Co. v. Herzig</u>, as a matter of first impression, held that Chapter 75 claims cannot be assigned because the public policy preventing the assignment of personal tort claims equally applied to claims of unfair and deceptive trade practices. 330 N.C. 681, 687-88, 413 S.E.2d 268, 271 (1992). Furthermore, federal and state courts, including separate panels of the North Carolina Court of Appeals, remain split on which conflict of laws rule applies to Chapter 75 — the <u>lex loci</u> rule for contracts predicated on the situs of the claim or the rule for torts favoring where the injuries occurred. <u>See, e.g.</u>, <u>Stetser v. Tap Pharm. Prods., Inc.</u>, 165 N.C. App. 1, 14-15, 598 S.E.2d 570, 580 (2004).

The particular acts or practices sufficient to give rise to a Chapter 75 claim also reflect the statute's enigmatic nature. While tort conduct such as negligent or fraudulent misrepresentation is sufficient to state a claim for unfair and deceptive trade practices, <u>see Powell v. Wold</u>, 88 N.C. App. 61,

23

68, 362 S.E.2d 796, 800 (1987), neither tort is an essential element of a Chapter 75 claim.  <u>Robertson v. Boyd</u>, 88 N.C. App. 437, 443, 363 S.E.2d 672, 676 (1988).  Instead, a claim for unfair and deceptive trade practices requires, at a minimum, some behavior more unfair and deceptive than "a mere breach of contract."  <u>Branch Banking & Trust Co. v. Thompson</u>, 107 N.C. App. 53, 62, 418 S.E.2d 694, 700 (1992).  The requisite level has been held to be a breach of contract plus "substantial aggravating circumstances attending the breach."  <u>Id.</u>  Nothing, however, requires or suggests that those aggravating circumstances rise to the level of a tort.

Considering the legislative and judicial history of Chapter 75 claims, their unique nature, and required conduct level, the court cannot simply generalize all Chapter 75 claims as either torts, as Plaintiff asserts, or non-torts, as Defendant argues, for purposes of recovering implied-in-law indemnity and contribution.  The better and more logical approach, in the absence of binding precedent or a specific mandate from the North Carolina legislature, is to individually determine the gravamen of the Chapter 75 award at issue.  Those Chapter 75 awards premised on conduct arising to a tortious level should reasonably be considered torts for purposes of implied-in-law indemnity and contribution.  Those remaining claims premised upon a breach of contract plus substantial, yet non-tortious, aggravating factors,

24

or other lesser conduct, should not be considered torts for these purposes. This complies with the reasoned principle that "[t]he nature of the action is not determined by what either party calls it, but by the issues arising on the pleadings and by the relief sought." Hayes v. Ricard, 244 N.C. 313, 320, 93 S.E.2d 540, 545-46 (1956).

Looking to the gravamen of the panel's award of treble damages to Sun and Cullu for violations of Chapter 75, the court finds that both are premised upon tortious conduct. Despite awarding compensatory damages to Sun only on contract-based claims, the panel found that CBP's "numerous representations to Sun and Mr. Cullu regarding the pork-free nature" of the yellow grease were made "either knowing they were false or with a conscious disregard for the possibility they were false." (Compl. Ex. 3 at 8.) The finding led the panel to treble the awards to Sun and Cullu. (Id. at 6, 8.) When an act is done with "conscious disregard," it rises to the level of gross negligence, Yancey v. Lea, 354 N.C. 48, 53, 550 S.E.2d 155, 158 (2001), and is equivalent to the term "recklessness." See Parish v. Hill, 350 N.C. 231, 238, 513 S.E.2d 547, 551 (1999). A representation made knowing it was false or with reckless or conscious disregard for the truth, is an essential element of a tort claim of fraud in the inducement. Harton v. Harton, 81 N.C. App. 295, 298-99, 344 S.E.2d 117, 119-20 (1986). By the plain

25

meaning of its legal findings, the arbitration panel held the underlying actions giving rise to Chapter 75 liability were tortious.

The particular use of treble damages by the panel is also instructive.  The panel chose not to award actual damages under Chapter 75, which is one of the recognized purposes of the statute.  Instead, the panel awarded actual damages under different theories of recovery and chose to use Chapter 75 merely as a vehicle for the trebling of damages.  This use, clearly penal under the circumstances, resembles an award of punitive damages in tort cases.  See Woody v. Catawba Valley Broad. Co., 272 N.C. 459, 463, 158 S.E.2d 578, 581-82 (1968) ("While punitive damages are not recoverable as a matter of right, sometimes they are justified as additional punishment for intentional acts which are wanton, wilful, and in reckless disregard of a plaintiff's rights.")

Because the gravamen of the arbitration panel's awards to Sun and Cullu of treble damages under Chapter 75 is tortious, the court finds the tort requirement met for purposes of Plaintiff's claims for implied-in-law indemnity and contribution.

26

## 2. Whether Plaintiff May Recover Indemnity or Contribution

Having determined that Cullu's award of actual damages and both Sun and Cullu's awards of treble damages sound in tort, the court must determine whether Plaintiff may recover indemnity or contribution as a matter of law.

Indemnity and contribution are mutually inconsistent. Indemnity is based on derivative fault and exists "whenever one party is exposed to liability by the action of another who, in law or equity, should make good the loss of the other." McDonald v. Scarboro, 91 N.C. App. 13, 22, 370 S.E.2d 680, 686 (1988). Plaintiff seeks indemnity only under an implied-in-law theory, which the North Carolina Supreme Court has recognized:

> Where two persons are jointly liable in respect to a tort, one being liable because he is the actual wrongdoer, and the other by reason of constructive or technical fault imposed by law, the latter, if blameless as between himself and his cotortfeasor, ordinarily will be allowed to recover full indemnity over against the actual wrongdoer.

Hayes v. City of Wilmington, 243 N.C. 525, 543, 91 S.E.2d 673, 686 (1956). The North Carolina Supreme Court has further explained:

> Primary and secondary liability between defendants exists only when: (1) they are jointly and severally liable to the plaintiff; and (2) either (a) one has been passively negligent but is exposed to liability through the active negligence of the other or (b) one alone has done the act which produced the injury but the other is derivatively liable for the negligence of the former.

27

Edwards v. Hamill, 262 N.C. 528, 531, 138 S.E.2d 151, 153 (1964)
(internal citations omitted).  Implied-in-law indemnity typically
arises through derivative liability or through the doctrine of
respondeat superior.  See Bridgestone/Firestone, Inc. v. Ogden
Plant Maint. Co. of N.C., 144 N.C. App. 503, 508, 548 S.E.2d 807,
811 (2001).  Implied-in-law indemnity is not permitted in favor
of the primarily liable party or "when the defendants are in pari
delicto, that is, when both defendants breach substantially equal
duties owed to the plaintiff."  Kim v. Professional Bus. Brokers
Ltd., 74 N.C. App. 48, 51, 328 S.E.2d 296, 299 (1985).

By contrast to indemnity, contribution assumes joint fault.
In North Carolina, contribution is governed by statute, which
provides:

> Except as otherwise provided in this Article, where two
> or more persons become jointly or severally liable in
> tort for the same injury to person or property or for
> the same wrongful death, there is a right of
> contribution among them even though judgment has not
> been recovered against all or any of them.

N.C. Gen. Stat. § 1B-1(a).  No right to contribution exists where
the person seeking contribution is free from negligence or is not
a tortfeasor or jointly liable.  Nationwide Mut. Ins. Co. v.
Weeks-Allen Motor Co., 18 N.C. App. 689, 693, 198 S.E.2d 88, 91
(1973).

Applying the rules governing implied-in-law indemnity and
contribution to the facts as alleged by Plaintiff, Plaintiff has

28

stated a claim for contribution, but not for indemnity.  The arbitration panel clearly found Plaintiff breached duties, both under contract and tort law, it owed to Sun and Cullu.  Such determination is equivalent to primary liability or active negligence.  The arbitration panel's findings make Plaintiff, at the very least, in <u>pari delicto</u> with Defendant.[6]  As a result, Plaintiff cannot state a claim for implied-in-law indemnity as a matter of law.  <u>See</u> <u>Kim</u>, 74 N.C. App. at 51, 328 S.E.2d at 299. The corollary is since Plaintiff is not free from negligence, it may recover contribution from Defendant if it can prove Defendant is a tortfeasor or is jointly liable to Sun and Cullu for the claims sounding in tort.  <u>See</u> <u>Nationwide</u>, 18 N.C. App. at 694, 198 S.E.2d at 91.

_____

[6]  Plaintiff disagrees with the application of collateral estoppel to prevent it from showing Defendant bears primary culpability for Sun and Cullu's injuries.  (Mem. Law Opp'n Def.'s Mot. Dismiss at 16.)  Plaintiff contends because Defendant was not a party to the arbitration, "the participants were not afforded a full and fair opportunity to litigate any issues relating to SGS's culpability." (<u>Id.</u>)  While it is true Defendant was not a participant in the arbitration, this would not have prevented a finding that Plaintiff was only vicariously liable as a result of a third-party's actions or liable only for an omission in acting, just as it would not have prevented the panel from finding Plaintiff free of negligence entirely.  The panel's findings are clear — Plaintiff breached duties owed to Sun and Cullu irrespective of Defendant's actions.  This finding forecloses indemnity.

## IV. CONCLUSION

For the reasons stated herein,

IT IS ORDERED that Defendant SGS Control Services Inc.'s
Motion to Dismiss Plaintiff CBP Resources, Inc.'s Complaint [6]
is DENIED in part and GRANTED in part.  Defendant's motion is
DENIED as to Count I (unfair and deceptive trade practices).
Defendant's motion is GRANTED as to Count II (implied-in-law
indemnity).  Count III (contribution) is DENIED as to
compensatory damages awarded to Cullu and treble damages awarded
to both Sun and Cullu.

This the 17th day of May 2005.


United States District Judge